# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**DOUGLAS A.,**[1]

       **Plaintiff,**

      **Case No. 3:22-cv-4277**

     **v.**        **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

       **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Douglas A. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

## I.    PROCEDURAL HISTORY

On April 30, 2015, Plaintiff filed his application for benefits, alleging that he has been disabled since November 24, 2014. R. 126, 135, 209–10. The application was denied initially

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin J. O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

and upon reconsideration. R. 138–42, 145–47. Plaintiff sought a *de novo* hearing before an

administrative law judge ("ALJ"). R. 149–63. ALJ Paul Armstrong held a hearing on January 22,

2018, at which Plaintiff, who was represented by counsel, appeared and testified, as did a

vocational expert. R. 83–116 ("the 2018 hearing"). In a decision dated February 26, 2018, ALJ

Armstrong concluded that Plaintiff was not disabled within the meaning of the Social Security

Act from November 24, 2014, Plaintiff's alleged disability onset date, through the date of that

decision. R. 71–78 ("2018 decision"). On appeal to this Court from that decision, United States

District Judge Freda L. Wolfson granted the parties' Consent Order reversing and remanding the

matter for further proceedings before a different ALJ. R. 893–94. *See Cirko v. Commissioner of*

*Social Security*, 948 F.3d 148 (3d Cir. 2020).

> On remand, the Appeals Council issued the following directive:
>
> The Appeals Council hereby vacates the final decision of the Commissioner of
> Social Security and remands this case to an Administrative Law Judge for further
> proceedings consistent with the order of the court.
>
> Further, the claimant filed a subsequent claim for Title II disability benefits on
> January 12, 2019. The Appeals Council's action with respect to the current
> electronic claim renders the subsequent claim duplicate. Therefore, the
> Administrative Law Judge will consolidate the claims files, associate the evidence,
> and issue a new decision on the consolidated claims (20 CFR 404.952 and
> HALLEX I-1-10-10). On remand, the Administrative Law Judge should apply the
> prior rules to the consolidated case pursuant to HALLEX I-5-3-30.
>
> In compliance with the above, the Administrative Law Judge will offer the claimant
> the opportunity for a hearing, take any further action needed to complete the
> administrative record and issue a new decision.

R. 900–01. On December 8, 2021, ALJ Peter Lee ("ALJ Lee" or "the ALJ") held an

administrative hearing, at which Plaintiff, who was again represented by counsel, testified, as did

a vocational expert. R. 806–37 ("the 2021 hearing"). In a decision dated April 26, 2022, ALJ Lee

concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any

time from November 24, 2014, Plaintiff's alleged disability onset date, through December 31,

2019, the date on which Plaintiff was last insured. R. 784–96 ("2022 decision"). Plaintiff timely

filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 30, 2023, Plaintiff

consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 15.[3] On October 2, 2023,

the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.      ALJ LEE'S 2022 DECISION AND APPELLATE ISSUES

Plaintiff was 49 years old on December 31, 2019, *i.e.*, the date on which he was last insured for benefits. R. 795. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between November 24, 2014, his alleged disability onset date, and that date. R. 786.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease with radiculopathy; carpal tunnel syndrome, status post left wrist surgery; obesity; depressive disorder; and anxiety disorder. *Id*. The ALJ also found that the following impairments were not severe: gastroesophageal reflux disease; hypertension; hyperlipidemia; diabetes mellitus; restless leg syndrome; and obstructive sleep apnea. R. 787.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 787–90.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 790–95. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an electrician. R. 795.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a photocopy machine operator, a collator operator, and a laundry sorter—existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 795–96. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 24, 2014, his alleged disability onset date, through December 31, 2019, the date on which he was last insured. R. 796.

Plaintiff disagrees with the ALJ's findings at steps four and five and presumably asks that the decision of the Commissioner be reversed and remanded with directions for the granting of

benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 10. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 9.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Jagdip Desai, M.D.

On November 9, 2017, Jagdip Desai, M.D., Plaintiff's treating interventional pain management specialist, completed a three-page, check-the-box and fill-in-the-blank form entitled, "Medical Assessment of Ability to Do Work-Related Activities." R. 506–08 ("Dr. Desai's 2017 opinion"); *see also* R. 592 (reflecting Dr. Desai's credentials and specialty). Dr. Desai described Plaintiff's symptoms as pain and weakness as well as decreased range of motion. R. 506. Dr. Desai opined that Plaintiff could lift and/or carry less than occasionally, *i.e.*, less than 1/3 of an 8-hour day, "15 lbs for lower back, less than 10 lbs for left wrist". *Id*. Plaintiff could stand/walk for 1 hour total in an 8-hour day and walk/stand for less than 30 minutes at a time without interruption. R. 506–07. Plaintiff could sit for less than a total of 1 hour in an 8-hour day and sit for less than 30 minutes at a time without interruption. R. 507. Plaintiff could climb and balance for less than 1/3 of an 8-hour workday and could stoop, crouch, kneel, and crawl for a minute. *Id*. Dr. Desai further opined that Plaintiff's ability to reach, handle, feel, and push/pull were affected by his impairments due to range of motion and pain. R. 508. Finally, Dr. Desai identified the following environmental restrictions caused by Plaintiff's impairments: heights, moving machinery, temperature extremes, chemicals, dust, fumes, and vibration. *Id.* In support of this assessment, Dr. Desai pointed to decreased range of motion, pain on flexion,

extension, and bending, as well as MRI findings. R. 506, 507, 508.

On February 22, 2019, and following a physical examination of Plaintiff on the previous day, Dr. Desai completed a two-page, check-the-box and fill-in-the-blank form entitled, "General Medical Report". R. 1341–43 ("Dr. Desai's 2019 opinion"). Dr. Desai opined that Plaintiff could occasionally lift and carry less than 15 pounds; stand and/or walk less than 2 hours per day; and sit less than 6 hours per day. R. 1342. Dr. Desai indicated that Plaintiff's ability to push and/or pull (including hand and foot controls) was limited but he did not specify the particular limitation. *Id*.

On October 28, 2021, Dr. Desai completed a two-page, check-the-box and fill-in-the-blank form entitled, "Medical Source Statement Physical." R. 1544–45 ("Dr. Desai's 2021 opinion"), R. 1551–52 (duplicate).[4] Dr. Desai opined that Plaintiff could sit, stand, and walk for a total of 1 hour during an 8-hour workday, for 1 hour at a time. R. 1544. Plaintiff could lift 20 to 24 pounds occasionally (1% to 33% of an 8-hour workday), lift 15 to 19 pounds frequently (34% to 66% of an 8-hour workday), and lift 1 to 4 pounds continuously (67% to 100% of an 8-hour workday). *Id*. Plaintiff could occasionally carry 15 to 19 pounds, could frequently carry 5 to 9 pounds, and could continuously carry 1 to 4 pounds. R. 1544–45. Plaintiff could occasionally use his hands for pushing and pulling arm controls and for simple grasping, but could never use either hand for fine manipulation. R. 1545. Plaintiff could occasionally use his feet for pushing and pulling of leg controls. *Id*. Finally, Dr. Desai opined that Plaintiff could occasionally bend, reach, push, and pull, but could never climb, squat, or crawl. *Id*.

### B.   Russell Gross, M.D.

On November 9, 2021, Russell Gross, M.D., Plaintiff's treating primary care physician,

---

[4] For convenience, the Court will refer only to R. 1544–45.

completed a two-page, check-the-box and fill-in-the-blank form entitled, "Medical Source Statement Physical." R. 1546 – 47 ("Dr. Gross's 2021 opinion");[5] *see also* R. 1318 (reflecting that Dr. Gross is Plaintiff's primary care provider). Dr. Gross opined that Plaintiff could sit, stand, and walk for a total of one hour during an 8-hour workday, for one hour at a time. R. 1546. Plaintiff could lift 20 to 24 pounds occasionally (1% to 33% of an 8-hour workday), 15 to 19 pounds frequently (34% to 66% of an 8-hour workday), and 1 to 4 pounds continuously (67% to 100% of an 8-hour workday). *Id*. Plaintiff could occasionally carry 15 to 19 pounds, could frequently carry 5 to 9 pounds, and could continuously carry 1 to 4 pounds. R. 1546–47. Plaintiff could occasionally use his hands for pushing and pulling arm controls and for simple grasping, but he could never use either hand for fine manipulation. R. 1547. Plaintiff could occasionally use his feet for pushing and pulling of leg controls. *Id*. Finally, Dr. Gross opined that Plaintiff could occasionally bend, reach, push, and pull, but could never climb, squat, or crawl. *Id*.

## V.    DISCUSSION

As noted, the ALJ determined that Plaintiff had the RFC for a limited range of light work. R. 790–95.  Plaintiff argues that substantial evidence does not support that RFC determination because the ALJ failed to properly weigh the opinions of Dr. Desai and Dr. Gross. *Plaintiff's Brief*, ECF No. 8, pp. 22–26; *Plaintiff's Reply Brief*, ECF No. 10, pp. 5–8. For the reasons that follow, this Court agrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler*

---

[5] Dr. Gross also authored a mental medical source statement, R. 1548–49, which the Court does not address in this decision.

11

*v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In addition, an ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell

if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[6] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and

---

[6] As previously noted, Plaintiff's claim was filed on April 30, 2015. R. 126, 135, 209–10; *see also* R. 900 (consolidating Plaintiff's subsequent Title II disability benefits claim with his earlier-filed claim); *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 9, p. 11 n.7 (noting that the prior regulatory framework governing claims filed prior to March 27, 2017, applies). For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

may reject a treating physician's opinion outright only on the basis of contradictory medical
evidence and not due to his or her own credibility judgments, speculation or lay opinion."
*Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must
consider the following factors when deciding what weight to accord the opinion of a treating
physician: (1) the length of the treatment relationship and frequency of examination; (2) the
nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the
consistency of the opinion with the record as a whole; (5) the treating source's specialization;
and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still
may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'"
*Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225
F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the
government 'may properly accept some parts of the medical evidence and reject other parts,' the
government must 'provide some explanation for a rejection of probative evidence which would
suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994));
*Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a
non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642
F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the
wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been
rejected is required so that a reviewing court can determine whether the reasons for rejection
were improper.") (internal citation omitted).

     At step four of the sequential evaluation, the ALJ determined that Plaintiff had the RFC
to perform a limited range of light work:

     After careful consideration of the entire record, I find that, through the date last
     insured, the claimant had the residual functional capacity to perform light work as

defined in 20 CFR 404.1567(b) except the claimant can never climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; never crawl; occasionally kneel; occasionally stoop and crouch; perform frequent fingering and handling; frequently balance; and is able to perform simple and routine tasks.

R. 790. In reaching this determination, the ALJ, *inter alia*, discounted Dr. Desai's three opinions

as well as Dr. Gross's 2021 opinion, reasoning as follows:

I have considered the opinion of Dr. Jag Desai, the claimant's primary care provider [sic],[7] who has completed three medical source statement forms regarding the claimant. Dr. Desai opined on a form completed on November 9, 2017 that the claimant is *essentially bed bound* by his back impairment as the doctor opined that he can only sit, stand, or walk for less than two hours in an eight hour period (Exhibit 8F). Such an extreme limitation has no basis in the medical record as it is not supported by the objective evidence and is not consistent with the other evidence of record. Dr. Desai opined on a form completed on February 22, 2019 that the claimant retains the capacity for a very narrow range of sedentary work activities (Exhibit 20F/2). *This opinion is also given limited weight as the opinion is not supported by the objective evidence and is not consistent with the other evidence of record including Dr. Desai's own contemporaneous observation that the claimant's back condition is mild to moderate* (*Exhibit 20F/4* [R. 1344]). Dr. Desai opined on a form dated October 28, 2021 that the claimant retains the exertional capacity for slightly greater than light exertional work, but again indicated that the claimant is *essentially bedbound* as the doctor opined that he can only sit, stand, or walk for three hours total in an eight hour period (Exhibit 46F; 48F). Again, such an extreme limitation has no basis in the medical record as it is not supported by the objective evidence and is not consistent with the other evidence of record. All three of Dr. Desai's opinions are extreme in light of the evidence, which Dr. Desai has acknowledged results in only mild to moderate symptoms.

I have carefully considered the opinion of Dr. Russell Gross, who has provided pain management[8] to the claimant. Interestingly, Dr. Gross complete same form that Dr. Desai completed on October 28, 2021 and exactly mirrored the choices circled by Dr. Desai. The two identical opinions were submitted on identical forms (Exhibit 46F; 47F; 48F). *This infers that these forms may have been completed by the same person and simply signed by the doctors*. Regardless of this inference, like the assessment of Dr. Desai, Dr. Gross' opinion is extreme in that it indicates that the claimant retains the exertional capacity for slightly greater than light exertional

---

[7] As previously noted, Dr. Desai was Plaintiff's pain management specialist, not his primary care physician. R. 592.

[8] This Court has previously noted that Dr. Gross was Plaintiff's primary care physician; he did not provide pain management to Plaintiff. R. 1318.

work, but again indicated that the claimant is *essentially bedbound* as the doctor opined that he can only sit, stand, or walk for three hours total in an eight hour period. As with the opinion of Dr. Desai, this assessment is given limited weight.

R. 793–94 (emphasis added).

Plaintiff challenges the ALJ's consideration of these opinions, arguing first that the ALJ erred when finding that Dr. Desai's "contemporaneous observation" that Plaintiff's "back condition is mild to moderate" did not support this physician's 2019 opinion. *Plaintiff's Brief*, ECF No. 8, p. 24. Plaintiff specifically contends that this alleged statement does not appear on the ALJ's cited page or anywhere else in the cited exhibit, explaining that this evidence reflects only objective abnormalities and unsuccessful methods of pain relief. *Id*. (citing R. 1341–50). Plaintiff further contends that Dr. Desai never used the phrase "bed-bound," nor can that conclusion reasonably be inferred from his assessments. *Id*. Plaintiff also argues that the ALJ discussed only opinions related to Plaintiff's ability to sit, stand, and walk without addressing the opined arm, hand, and finger limitations opined by Dr. Desai and Dr. Gross, rendering the ALJ's decision in this regard unreviewable. *Id*. Plaintiff goes on to argue that the ALJ improperly suggested that Dr. Gross's 2021 opinion was the result of "forgery" simply because that opinion reflected the same limitations as did Dr. Desai's 2021 opinion. *Id*. at 24–25. Plaintiff therefore concludes that the ALJ's rejection of the opinions of Dr. Desai and Dr. Gross was flawed and warrants remand. *Id*. at 25–26.

Plaintiff's arguments are well taken. As a preliminary matter, Plaintiff correctly points out that the ALJ's particular citation (Exhibit 20F/4, R. 1344) does not support his finding that Dr. Desai described Plaintiff's "back condition" as "mild to moderate," nor can the Court locate support for that finding anywhere in the ALJ's cited exhibit. R. 1341–50 (Exhibit 20F); *cf. Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("'[J]udges are not like pigs, hunting

16

for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)). The Court is therefore constrained to conclude that the ALJ rejected, at least in part, Dr. Desai's 2019 opinion on evidence that does not exist. *See Brownawell*, 554 F.3d at 357 (reversing and remanding for payment of benefits where, *inter alia*, the ALJ supported his rejection of a treating physician's "opinion of disability in large part on evidence that does not exist" and "concluding that "[t]his mistake, and others like it, indicate that the ALJ's decision to discredit [the treating physician] was not supported by substantial evidence").

Plaintiff also properly notes that the ALJ's discussion is silent regarding the doctors' opined arm, hand, and finger limitations, *i.e.,* that Plaintiff can only occasionally grasp and push and pull arm controls and can never engage in fine manipulation. R. 793–94, 1545, 1547. Although an ALJ is not required to discuss every piece of evidence, this ALJ's failure to discuss these opined limitations leaves the Court at a loss as to why the ALJ apparently rejected these limitations. *See Jones*, 364 F.3d at 505 (explaining that an ALJ does not need to "use particular language or adhere to a particular format in conducting" an analysis as long as "there is sufficient development o the record and explanation of findings to permit meaningful review"). Moreover, even reading the ALJ's opinion as a whole, the Court cannot conclude that substantial evidence supports the ALJ's implicit rejection of these opined limitations. For example, in weighing the opinions of the reviewing state agency consultants, the ALJ concluded that "the opinion limiting the claimant to *occasional handling with the left hand is given limited weight as the evidence indicates that the claimant's condition improved after surgery (Exhibit 24F/4, 5* R. 1377–78])*."* R. 793. However, the evidence that the ALJ cited in support of this conclusion does not, in fact, support the ALJ's implicit rejection of the opined handling/grasping/fine manipulation

17

restrictions opined by Drs. Desai and Gross. Specifically, that evidence reflects, *inter alia*, that Plaintiff had grip strength of 30 pounds on the right hand and 20 pounds on the left hand; pinch strength of 9 pounds on the right and 4 pounds on the left; a positive Tinel's and positive Phalen's test at 5 seconds on the right; and that Dr. Steven Beldner assessed Plaintiff with, *inter alia*, scapholunate advanced collapse ("SLAC") in the right wrist; carpal tunnel syndrome in the right wrist that "appears moderate to severe"; and that "[o]ptions ranged from conservative care *to surgical intervention* were reviewed and all questions answered." R. 1378 (emphasis added). This evidence supports, rather than undermines, the opined handling/grasping/fine manipulation restrictions of Dr. Desai and Dr. Gross. *See McFadden v. Kijakazi*, No. CV 23-2432, 2024 WL 113760, at *3 (E.D. Pa. Jan. 10, 2024) (remanding action where, *inter alia*, the ALJ limited use of the claimant's arms, but not her hands, and evidence reflected, *inter alia*, "positive Tinel's and Phalen's tests, such as McFadden had on the right side, [which] indicate nerve compression or damage"); *Solomon v. Kijakazi*, No. 1:22-CV-359, 2023 WL 2249971, at *1 (M.D. Pa. Feb. 27, 2023) ("A Tinel sign is 'a tingling feeling you get when your healthcare provider taps your skin over an affected nerve. Test results can help them diagnose nerve compression.'") (internal citation omitted); *cf. Gass v. Kijakazi*, No. 1:19-CV-404-TLS, 2021 WL 5446734, at *4 (N.D. Ind. Nov. 22, 2021) (noting that finding that "[t]he ALJ offers no explanation for why a grip strength of 35 pounds is inconsistent with the Plaintiff's reports of pain and weakness" and that "the mean grip strength for men age 40–45 for the right hand is 116.8 pounds") (internal citations omitted); *Wilcox v. Comm'r of Soc. Sec.*, No. 13-CV-12549, 2014 WL 4109921, at *6 (E.D. Mich. Aug. 19, 2014) (noting that the 53-year-old male claimant had a grip strength of 38 pounds in the right hand and 35 pounds in the left hand, and, when converted to kilograms, the left hand grip strength was 18.7747 kilograms and his right was 15.8758 kilograms, which,

according to the Commissioner's chart measuring normal grip strength, "anything less than 32.9 kilograms for a male aged 50–54 is considered 'weak'") (internal citations omitted). Notably, although an ALJ is free to weigh the opinions of even a treating physician and to determine whether to credit those opinions, the ALJ cannot reject evidence from a treating physician "for the wrong reason." *Morales*, 225 F.3d at 317 (citation and internal quotation marks omitted); *see also Rodriguez v. Colvin*, No. CV 16-4322, 2018 WL 1474073, at *4 (E.D. Pa. Mar. 23, 2018) ("Courts have concluded that substantial evidence cannot be based on factual errors.") (collecting cases); *cf. Brownawell*, 554 F.3d at 357 (reversing and remanding for payment of benefits where, *inter alia*, the ALJ supported his rejection of a treating physician's "opinion of disability in large part on evidence that does not exist" and "concluding that "[t]his mistake, and others like it, indicate that the ALJ's decision to discredit [the treating physician] was not supported by substantial evidence").

The ALJ also erred when he based his decision to discount—at least in part—Dr. Gross's 2021 opinion and Dr. Desai's 2021 opinion because the ALJ "infers" that these opinion forms "*may* have been completed by the same person and simply signed by the doctors." R. 793 (emphasis added). The ALJ's inference in this regard boils down to nothing more than rank speculation, which cannot be used as a basis to discount a medical opinion. *See Morales*, 225 F.3d at 317 (stating that an ALJ may not make "speculative inferences from medical reports" and may not reject a treating opinion with "his or her own credibility judgments, speculation or lay opinion"); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks.").

Moreover, the ALJ's errors in assessing the opinions of Dr. Desai and Dr. Gross take on greater significance when one considers that the vocational expert in the 2021 hearing, upon whose testimony the ALJ relied, R. 795–96, testified that a limitation for occasional handling/grasping and/or no fine manipulation with either hand would eliminate the unskilled jobs—photocopy machine operator, collator operator, and laundry sorter—identified by that expert:

EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:

Q In the Judge's hypothetical he talked about frequent use of the hands and fingers. *If we were to change that and say that in terms of pushing and pulling of arm controls and simple grasping with either hand it was limited to occasionally* which I assume we're agreeing that that's *up to 1/3 of the day*, is that correct?

A Yeah. *Grasping I took it as handling for the language in the regulations and the DOT and SCO.*

Q Okay. *So if that were the case would the jobs that you had just indicated be possible*?

A *No, they would not.*

Q Okay. If we were to assume without regards to those limitations but in terms of fine manipulations, the individual never had the ability to use either -- either hand for fine manipulations would that interfere with the ability to perform any of the jobs that you had indicated?

A Yeah, could not do.

Q Would that -- does that -- these two in combination does that effectively preclude the performance of any unskilled work activity?

A So that would be the two of them in combination so yes.

Q Okay.

A The last one is more restrictive so if you put them together the answer would be yes.

Q Okay. *So even if we were just to say no fine manipulations at all with either hand would that preclude the performance of any of the unskilled work activity you referred to?*

A *Yes, because the ones that would be occasional for reaching and handling also require occasional fingering and we reduce it to less than that.*

R. 831–33 (emphasis added). Based on this record, the Court cannot conclude that substantial evidence supports the ALJ's consideration of the opinions of Dr. Desai and Dr. Gross and, ultimately, the RFC determination.

Curiously, however, the Commissioner insists that the testimony from a different vocational expert in the 2018 hearing establishes that Plaintiff could still engage in other jobs, *i.e.*, furniture rental consultant, counter clerk, and usher, if Plaintiff were limited to, *inter alia*, frequent fingering and handling with the dominant right hand and no more than occasional fingering and handling with the non-dominant left hand. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 9, pp. 15–16 (citing R. 111–12). The Commissioner goes on to construe the DOT as providing that these light unskilled jobs require no more than, *inter alia*, occasional fingering and handling, and, therefore, could have been performed by Plaintiff. *Id*. (citations omitted). The ALJ, however, did not rely on vocational expert testimony from the 2018 hearing when finding at step five that other jobs exist in the national economy that Plaintiff could perform. R. 795–96. The Court must therefore reject the Commissioner's *post hoc* rationalization in this regard. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for

reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).[9]

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[10] Moreover, remand is appropriate even if, upon further examination of the opinions of Dr. Desai and Dr. Gross and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once

---

[9] This Court has previously concluded that an ALJ is not required to address vocational testimony—even if contradictory—from a prior administrative hearing. *See Peter R. v. Comm'r of Soc. Sec.*, No. 1:22-CV-05268-NLH, 2023 WL 4102891, at *4 (D.N.J. June 20, 2023) ("Plaintiff argues that ALJ Shelton erred in relying on testimony presented by the vocational witness in Plaintiff's second hearing — the hearing before ALJ Shelton — and failing to explain why she did not rely on the first vocational witness that testified in Plaintiff's first hearing before ALJ Martin. . . . The ALJ was not required to specifically discuss the testimony from the first vocational witness.") (citations omitted); *Michele R. v. Kijakazi*, No. CV 20-15032, 2022 WL 1081035, at *6 (D.N.J. Apr. 11, 2022) ("On remand, the ALJ reviews evidence de novo and is therefore not required to consider the vocational testimony of a VE [vocational expert] from a vacated prior decision.") (citations omitted); *Brando v. Colvin*, No. CV 15-3219 (FLW), 2017 WL 2364194, at *23 (D.N.J. May 31, 2017) ("ALJ Rubini properly relied on the testimony of VE [Vocational Expert] Turetzky in determining whether Plaintiff is capable of performing his past relevant work. Thus, ALJ Rubini's failure to address the testimony of the prior vocational experts is not a basis for remand or reversal.").

[10] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the opinions of Dr. Desai and Dr. Gross and the RFC determination, the Court does not consider those claims.

.

22

more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  April 12, 2024                              *s/Norah McCann King*
                                                             NORAH McCANN KING
                                                             UNITED STATES MAGISTRATE JUDGE